Good morning, Scott Kornbaum for the Plaintiff Appellant. As you consider this appeal, I think it's significant that there are at least three undisputed facts that require reversal. First, when Officer Brown approached the group, which included Mr. Basinski, two others, and the vendor, Mr. Elbendary, he had the summonses in his hand that he intended to give to Mr. Elbendary. Second, in response to Officer Brown's order to move, he moved approximately ten feet in the direction requested by Officer Brown, and he was then situated on the other side of the vendor's cart, with the vendor on the opposite side. And throughout the entire five-and-a-half, six-minute interaction, from the time that's videotaped to the time of his arrest, he never moved from that location. There are two other facts, one of which is disputed, and there's a fourth fact which has to be drawn in our favor, the inference that has to be in our favor, is that the group was just talking when Officer Brown approached. So from there, from the next five minutes on, regardless of what Mr. Basinski said, regardless of what he did or didn't do, he never interfered with Officer Brown's ability to say, be quiet, just walk around to the other side of the cart and say, here, Mr. Elbendary, here are the summonses. That could have happened five, ten seconds into there, as soon as he moved. And with those facts in mind, there's no OGA, and there's no disorderly conduct. And so, it's, and when you, I invite the Court, if it hasn't done so already, to watch the videos, and watch the first approximately 45 seconds of what's referred to as Mr. Basinski's video, which is the longer video. And then the second video, which is Mr. Omar's video, and you'll see exactly that. I've looked at the videos, help me, where, how do we know where the vendor is standing on the video? If you look at page, in his deposition, while no, but for reasons, I didn't handle the matter below. For reasons I don't understand, neither defense counsel nor plaintiff's counsel asked any of the participants to identify the vendor. But at page 198 and 199 of the joint appendix, Mr. Basinski gives testimony as to where the vendor is. He's saying he is, as I just described, on the opposite side of the court, near the facade of the precinct. Because your adversary in his brief, and it seems to have some plausibility in a qualified immunity argument, says that the difficulty, one way of looking at the video, is the difficulty is your client was standing in front of, it was insisting on standing behind Officer Brown as Officer Brown was attempting to give a summons, and was refusing to move the further distance that the officer was requesting, so that he was within, one phrase in the brief is striking distance. He could reach out, and he was behind Officer Brown. And that was intimidating, because Officer Brown has a gun, which he has to protect, and he was discharging official duties. And your client was refusing a request to move a few feet further away, so he wouldn't be so proximate. What's wrong with that argument? Well, many things are wrong with that argument, which is it's just not an accurate reading. It is a reading of the video, which, whether you apply Cameron or Scott v. Harris, that means that it's the jury's determination. But again, if you juxtapose the videos and you see him moving, he is on the opposite side of the cart. And if you credit what Mr. Buszynski says, that the vendor is on the opposite side of the cart, then he's not interfering with him in any way. As far as the intimidation is concerned, another reading of the video is, yet he's in striking distance, Officer Brown can't move. Now, I know he may not have to move, but he is holding his video like this. And I suggest it's more plausible, for qualified immunity purposes, when you have a complete absence in the accusatory instrument of any mention of feeling intimidated. A jury can conclude that there was no intimidation going on. And here's what the accusatory instrument says. All of which is belied by the video. When I exited the precinct, this is at 381 and 382 of the joint appendix. When I exited the precinct in order to issue the summonses to Mr. Elbendary, I observed defendant Sean Buszynski and an unidentified female receiving water from Mr. Elbendary. I observed that defendant and the unidentified female were standing between me and Mr. Elbendary, and that I could not access Mr. Elbendary in order to hand him the summonses. That's a disputed fact, but it goes on. I suggest it's also irrelevant, what matters next is relevant. I asked Mr. Elbendary if he was selling water in front of the precinct, and I then observed defendant Buszynski state in substance to me, quote, he's not vending and he can do whatever the fuck he wants. I think we can all agree that's not on the video. Maybe it happened before, but that's a disputed fact. But it's certainly not on the video. I asked the defendant if he had any business with Mr. Elbendary, and the defendant stated in substance to me that he did not. That's not on the video. Maybe it happened beforehand. It's a disputed fact. I then asked the defendant to move out of the way so that I could hand the summonses to Mr. Elbendary. And I observed that the defendant refused to move, stating in substance to me, I ain't moving shit, and you can't make me move. That is not on the video, and that is false, because he moved. That is undisputed. But isn't it clear that he didn't move to the distance that the officer wanted him to move? Is it your position that if an officer says, move 15 feet away, and he can make a judgment that I'm only going to give you 10 feet because I think that's all that you need? It's not his judgment to make, and it isn't still a lawful order for the officer, if he's doing his job, to say, I'd like you to move over here, and he refused. He did not move where the officer asked him to move. He moved in the direction that he asked him to move. But not the distance. And it was not a lawful order. But not the distance. Yes, it's undisputed he wanted him to move more, but he couldn't make him move more legally. But why is that an unlawful order? If the officer isn't, why is it your client's judgment as opposed to the officer's judgment about how much distance the officer needs? Because it doesn't violate any statute. It doesn't violate the disorderly conduct statute. Okay, because here's what the disorderly conduct statute provides. How about the obstruction of, I'm happy to hear the disorderly conduct statute, but the obstruction of governmental administration statute is also relevant here. Well, those are the two crimes that he's charged with, and those are the only two. But he's not interfering with his ability to perform a lawful function. That's why I. Why can't the police decide that they wish to establish a cordon within which police business can be conducted and decide that they want everyone to be what they consider to be a safe distance away from the place where they're going to conduct business. But it's the, they can judge. But they can. Yeah, but it's still, but Mr. Businski still had to have done something that violated a penal law provision. So if the police can establish a cordon within which they can conduct, safely conduct police business from their point of view, then I, then it seems to me it's a lawful order to say please move beyond what I consider to be the distance in which I feel safe. Keep in mind this started out with just Officer Brown, I mean it ended up with the entire precinct. But it started out with just one person who looked to me to be about seven inches shorter than your client. And much broader and much more physically imposing than Mr. Businski, a jury can find. But it- I'm not sure we want juries to decide who is more fit or more imposing or whatever. I mean, even if you had a very short person and a very small person, you may want that person to be out of reach of the gun, out of reach of anything else. But that gets back to the point which is, and this gets back to Judge Daniel's point, which is, he still had to have committed a crime. Something where there was probable cause. And the lawful order statute of disorderly conduct says, a person is guilty of disorderly conduct when with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof. He congregates with other persons in a public place and refuses to comply with a lawful order to please disperse. And I direct the court's attention to People versus Johnson, which is factually quite similar and involved actually gang activity, where the New York Court of Appeals said, just loitering outside of a doorway and disobeying a police officer's direction to move doesn't comply. They were not congregating with the intent to cause annoyance and alarm. Again, the congregation is the group. Baczynski- How about, at least for arguable probable cause, the obstruction of governmental administration statute? because there it's just, and correct me if I'm misunderstanding, a person has to intentionally impair a governmental function or attempt to prevent a public service from performing an official function by means of intimidation. And the point I'm asking about, isn't it intimidating to stand behind someone who is an armed official and has to make sure that they're protecting their weapon and that there's no chance of someone approaching them from the back and then repeatedly refusing a request to move a few feet further away? But there's no evidence of intention, jury can find there's no evidence of intimidation here. Because, again, I point you to the accusatory instrument where there's no evidence of it. Very important, and I'm over my time, can I finish? Go right ahead. When Brown speaks to the Lieutenant Cokie, he doesn't say anything about intimidation, nothing. He says, falsely, he put a camera in my face. That is false. So, look at Brown's conduct. It just belies any sense of intimidation. And if you look at the cases the city cites for intimidation, you have multiple people surrounding an officer, you have them interfering. That's not this, this is, and Brown repeatedly like a moth to the flame. I'm sorry, Brown comes back to Buszynski. Nothing, he never stopped him from just, and I get back to the initial point, here are their summonses. Once Brown, I'm sorry, once Buszynski moves, Brown can just go to the other side and then say, here are the summonses. Okay, instead he jaws with it. And not deliver the summons. I mean, people get stopped all the time. Cops say you blew that light. Don't do that again. But the only, could he have had a last minute saying yes? I don't, I honestly- We don't know. But we do judge. Because he testified, in their brief, I came out to give the summonses to Elbendary. He dragged him from, according to Buszynski- That the police officer has with Mr. Elbendary? Well, he does. He says at one point, you hear him on the video, go ahead, give him the summonses. But why is it his business to tell the police to deliver a summons? Well, I absolutely agree that Officer Brown ultimately did not have to, but he could have. The question is- I mean, I watched the video, and it's not the prettiest picture when you have a graduate of Georgetown Law School getting his jollies by matching wits with a high school graduate. I agree with that, but I urge the court, all right? It may be easy to have this visceral reaction of strong dislike. I don't think I'd go out for dinner with Mr. Buszynski. Meaning the behavior that he engaged in, a strong aversion to it. But it's not criminal, and you can't put somebody in jail for a year when there's no crime committed. And you're saying that going out to dinner is not the relevant standard? I completely agree. Thank you. I think you've reserved- I did, I did, your honor. Thank you. You did. Thank you. May it please the court. Claude Platten on behalf of Officer Brown and Lieutenant Kochi. Buszynski engaged in a confrontational five minute encounter with Officer Brown while Brown was attempting to issue summonses to the street vendor. Buszynski stood very close to Brown and refused Brown's repeated request to move farther away. I mean, what stopped him from doing it? Well, let's go to the very beginning of the encounter. So this is even before the video starts. Mr. Buszynski testified at his deposition that when Officer Brown came out, he was about two to three feet from the vendor and two to three feet from Officer Brown. And he asked him to move and he did. Well, no, initially, right at the beginning of the video is Officer Brown saying, please move out of the way. Hadn't he already moved? No, well, the very first moment, Buszynski says, I'm not in your way, you can arrest me if you want. And he has not moved at that point. Then, after Brown repeats his request, he moves about five feet. So at the very beginning, when Officer Brown asks him to move, they're extremely close together. And Officer Brown reasonably could conclude that he didn't have what you described, Judge Jacobs, as the sort of zone to operate safely and comfortably to finish his business with the street vendor. At that point, when Mr. Buszynski refused, said you can arrest me here, I'm not moving, then he moved a few feet. I think there was a reasonable basis for Officer Brown to feel that he needed some more space. And that Buszynski stopping after moving three or four feet out of the way wasn't sufficient to give him the comfort that he felt he needed to complete that interaction. And as you said, we don't know what more business he had with the vendor. We don't know whether he was simply going to hand him the summons and run back inside. We do know that Officer Brown was concerned. Is it an offense for which someone can be arrested not to move along when the police say, move along, there's nothing to see here? It is certainly an offense if it constitutes either obstruction of governmental administration or disorderly conduct. I'll focus on the obstruction of governmental administration. Intentionally preventing or attempting to prevent official business by means of interference or intimidation. And you've spoken about the intimidation which the district court focused on. A reasonable officer in Officer Brown's position could conclude that Mr. Buszynski was attempting to intimidate him by standing so close by, refusing to move. But considering the facts in favor of the plaintiff, if the vendor is on the other side of the cart, why couldn't Officer Brown have just continued in his business, walked over to the other side of the cart? Yes, I intended to get to that, to the location of the vendor. You can see at the very beginning of the video that there's a man standing right behind Officer Brown in a black jacket, about two feet away. And from the testimony of Mr. Buszynski about where everyone was positioned right before the video started, you can infer that that was the vendor. They were standing all together at one end of the cart. And so, Officer Brown turned around from where he had been interacting with the vendor to engage in the interaction with Mr. Buszynski. Later on in the video, you can see that that same man in the black jacket had sort of moved to the other side of the cart while Officer Brown was dealing with Mr. Buszynski. But that doesn't mean that at the point where Officer Brown asserted his right to have some space, that the vendor was on the other side of the cart, that's not correct. They were immediately next to each other. But wasn't Mr. Buszynski's conduct more annoying to the officer rather than criminal? Well, no, as I think you said, Judge Daniels, an officer's entitled to define for himself what's a safe and comfortable space in which to engage in an interaction with a third party. And if a bystander, in his view, is physically interposing himself to the point where it's difficult to focus, then he has a right to ask that person to move farther away and to make a judgment as to how far is appropriate. And so, at the very beginning, he asked Mr. Buszynski simply to move. And Buszynski said, no, I won't move. At that point, I think he was justified in insisting on an even larger buffer, because Mr. Buszynski had signaled that he was being obstreperous, that he- That's sort of an underlying suggestion here, that the distance that Officer Brown had in mind was a distance from which Mr. Buszynski wouldn't be able to videotape what he was doing. Well, yeah, two points. The first is that initially, he didn't ask him to move to the far end of the card. He simply asked for more distance. And Buszynski said, I'm not moving, you can arrest me here if you want. At that point, I think he was entitled to insist on some more space. How many feet or yards are we talking about totally? The distance from where Mr. Buszynski was getting the water from the vendor and where the cop was telling him to go. At furthest distance, what are we talking about? I mean, I'm estimating. I watched the video, but I'm not very good at these things. Right, from one end of the card to the other, it's maybe ten feet. And to your question about whether he could videotape from there, we don't know whether he could videotape from there, because he never went that far. We also don't know whether, if he had moved there and come around perhaps to the other side, where he had a better view, that Officer Brown would have had any problem with that. Because what he said was he was refusing to move entirely. And that became something that Officer Brown had to deal with instead of turning back and completing his interaction with the vendor. He had to make sure that this person, whose intentions he didn't know, whose connection to the vendor he didn't know, was a safe distance away so that he could turn back and continue with his business. Now, as to disorderly conduct, what part of the disjunctive acts described in that did Mr. Basinski do? Was he recklessly creating a risk of what? What would you say? Well, I would say of both subsections five and six, of obstructing pedestrian traffic and of- He was standing near garbage, and unless somebody, a pedestrian, wanted to climb over the garbage to get someplace, I don't see how he would be obstructing the pedestrian. Well, it's true, but I think the concern was that because of his conduct, which was creating a public alarm, attracting attention, there were bystanders congregating. There was a narrow space allowing pedestrian traffic between the food cart and the wall of the building where many pedestrians had to pass. People were stopping, you can see it, but- Basinski was on the other side of it. If he was on the side between the facade of the police station and the cart, then he would be blocking the flow of traffic that you just described. But he seemed to be in a place where nobody would walk because that part of this sidewalk was blocked by a police van and a pile of garbage. Well, right, I'm not suggesting that his body was blocking the traffic. It was his conduct that was attracting attention and creating an obstruction. But I would focus on the subsection six. If the only reason it attracted any attention is because Officer Brown was making an issue of it. Well, I think Officer Brown was entitled to insist on, as I said, on a safe space. And when Officer Basinski refused to move, perhaps you could say that Officer Brown had the option of disengaging from that interaction and returning. But that was his judgment to make in that tense situation. And he had to make a judgment on the fly as to whether to disengage from Basinski, accept that he had moved far enough, or to insist that he move farther. And those kinds of judgments are why- He could have deescalated by, there were other officers in the vicinity, by having another officer stand and watch Mr. Basinski while he went about his business. He could have, potentially, but the standard for arguable probable cause isn't whether the officer engaged in what we consider the best practice or exemplary behavior. There's no constitutional obligation to avoid arresting someone where there's a probable cause to do so. Just because you might, through skillful means, avoid arresting that person. There was probable cause to arrest and certainly arguable probable cause to believe that Basinski was attempting to obstruct him from conducting his business. And- From a policing perspective, he did do some of the things that police officers are encouraged to do. He called a superior officer before making an arrest and spoke politely to Mr. Basinski. That's right, and I would note also that at about two minutes into the encounter, minute 45, Officer Brown withdraws from that confrontation, turns and asks a fellow officer to call a supervisor. And at that point, does not engage with Mr. Basinski any further. At that point, he turns to another bystander who's been gathering to look and says, can you please move along? At that point, Basinski interjects himself back into the encounter and says- He doesn't move forward, though. No, but he's physically in the space, and he says, that's where you wanted me to move, which undermines his authority, which distracts him from engaging with the officer. The physical requirement of physical interference is minimal under the New York precedent. Pretty much being physically present and interfering in a way with the officers is sufficient. The counter case is a decision involving a person who tipped off other drivers about a speed trap using a CB radio. And the court of appeals said, that person wasn't physically in the zone where the officers were acting. But in the David L case, the court came to a different outcome, noting that the defendant had intentionally intruded on an area of police activity after being put on direct notice to stay away. And that's exactly what happened here. Can I ask about the charging documents, because it seems to me very hard to square with the video. We at no point see the plaintiff cursing, which might have added to the disorder of the situation. We at no point, at least as far as I could see, see him block Officer Brown's path. So, and I understand from the record that the plaintiff has denied that he did these things. So to the extent that there's a material issue here about whether Officer Brown was truthful in the charging documents. Doesn't that affect the qualified immunity analysis? No, it doesn't, Judge Livingston, not for a false arrest claim. First, I would say, just as a factual matter, we have the benefit of a video of the encounter Officer Brown didn't at the time that he was trying to collect his recollection of a tense situation. And I think it's clear that there can be different recollections of an event like that. So I don't think there's any basis to infer that he was intentionally misrepresenting what had happened. But even so, the question about probable cause is what were the facts at the time of arrest? The charging document came later and couldn't retroactively manufacture probable cause and it can't undermine probable cause either. And we have the video, which can speak for itself, and you can see, as we've just discussed, that there was a basis for probable cause, at least argued probable cause to arrest Mr. Buszynski. And so, whenever you make of Officer Brown's account after the fact, it's simply irrelevant to whether he had probable cause in that moment under arrest. Thank you. Thank you. Mr. Kornbaum. There's one thing I forgot to add about how we know there was no interference. And then I'm going to address some of the points that Mr. Platton made. About two and a half minutes into the video, Buszynski video, and he still hasn't issued the summons, even though, as Mr. Platton can see, there's times where he's not engaging. It does seem rather inefficient. Right. So he says, when he says, that's where you told me to move, he goes, good, stay here all day. That's what Officer Brown said at approximately two and a half minutes in, and it's in our briefing. I don't have the exact where. Good, stay here all day. If he says that, the jury can conclude from that statement that he's not interfering with his ability, period. Well, but this is not just about where he was positioned. It's also about how he was engaging the police officer, why the police officer was trying to conduct his business. Well, yes, yes, if you're looking at the totality of the circumstances to determine probable cause, of course. But nothing he says interferes with his ability to go around the court. He was at least distracting the officer at that point. In Brown's mind, okay, but nothing stopped Brown from just saying, okay. And there's at least a 35 second gap, as Mr. Platton pointed out, before what I just indicated, where there's like two 35 second intervals, where there's no interaction between the two. Right, but the officer doesn't arrest him at that point either. No, but he also doesn't issue the summonses either. But the officer, I mean, for most of that period of time, the officer does, even though he's engaged with him, he shows some restraint. He's not, he doesn't tell him to move, he stands there and he arrests him. He calls another officer, the officer comes. At what point is he supposed to just say, well, I'm going to ignore this guy? He should have ignored him as soon as he moved. Right, but there are some points I need to make, and I see my time is almost up. Where was the vendor? You look at pages 197 through 199. That's where the vendor is. He's in front of the cart, and Mr. Platton says, you have this vending cart. It's not one where the vendor sits inside, stands next to it. So if this is the cart horizontally, and the bench is where the facade is. Elbendary is on that side, and you see in the video that Brzezinski's like around here, next to the garbage, so he's not interfering with anybody's flow of pedestrian traffic. And how one person can block the flow of pedestrian traffic is anybody's guess. Next, for Mr. Platton said that for 21 seconds into the video, Mr. Brzezinski didn't move, refused to move. That's just not correct. You see the video, and you see move, and he goes, okay, I'm moving. And you see the video backtrack. No, but doesn't he say, I've moved enough? Yeah, but that's later on. This is not for your purposes? I'm responding to what Mr. Platton said, which in the first instance, he refused to move, which is not the case. That's what I would say. He refused to move to where Officer Brown told him he should go. Well, he actually moved to where he was, and then Brown says, move some more. That is correct, but he does move in the direction Brown directs him. He's not interfering with Brown's ability, and again, there's no actual threatened harm. The New York Court of Appeals has made crystal clear when considering the disorderly conduct statute, that evidence of actual or threatened harm is a prerequisite before you even get to any of the subsections. And there is no evidence of actual or threatened harm. And that is, it's cited in our reply brief, in our main brief. It's people versus, not Katie? Well, we have the brief. Okay, people versus Johnson. So if there's no other questions, thank you very much. Thank you both. We'll reserve decision.